IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>ETHAN SANDOMIRE,<br><br>　　　　　　Defendant. | CR. NO. 20-00085 JMS<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT, ECF NO. 58 |

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT, ECF NO. 58

### I. INTRODUCTION

On September 30, 2020, a federal grand jury indicted Defendant Ethan Sandomire ("Defendant") with two counts: possession of a chemical weapon in violation of 18 U.S.C. § 229(a) (count 1) and possession of an unregistered destructive device in violation of 26 U.S.C. § 5861(d) (count 2). ECF No. 38 at PageID ## 145-46.

Before the court is Defendant's November 24, 2020 Motion to Dismiss Count One of the Indictment (the "Motion"), ECF No. 58. Defendant advances four arguments as to why count 1 should be dismissed: (1) that the court lacks subject-matter jurisdiction; (2) that the charge fails to state an offense;

(3) that § 229 is unconstitutionally vague; and (4) that, as applied in this case, § 229 is unconstitutional because it exceeds Congress' power under the Necessary and Proper and Treaty Clauses.  ECF No. 58-2 at PageID # 1241.  The Government filed its Opposition on December 10, 2020, ECF No. 67, and Defendant filed a Reply on December 28, 2020, ECF No. 73.  A hearing was held on January 11, 2021, ECF No. 88.

Defendant's arguments are based on his interpretation of *Bond v. United States*, 572 U.S. 844 (2014).  For the reasons set out below, the court disagrees with Defendant's interpretation of *Bond* and, accordingly, DENIES Defendant's Motion in full.

## II.  DISCUSSION

Count 1 charges Defendant with possession of a chemical weapon under the Chemical Weapons Convention Implementation Act, 18 U.S.C. § 229 (the "Act").  The Act implements the United States' treaty obligations under the International Convention on the Prohibition of the Development, Production, Stockpiling, and Use of Chemical Weapons and on Their Destruction (the "Chemical Weapons Convention" or "Convention").  S. Treaty Doc. No. 103-21, 1974 U.N.T.S. 317.

2

Prohibitions on the use of chemical weapons were first promulgated in response to the atrocities of chemical warfare during World War I. *Bond*, 572 U.S. at 849. Specifically, the international community adopted the 1925 Geneva Protocol to ban the use of chemicals as instruments of warfare. *Id.* But chemical weapons continued to be used to devastating effect, not only by state actors in times of war, but by private actors in times of peace. *Id.* The Chemical Weapons Convention was negotiated in response to this continuing violence in order to "expand the prohibition on chemical weapons beyond state actors in wartime," with the ultimate goal of "exclud[ing] completely the possibility of the use of chemical weapons." *Id.* (quoting Chemical Weapons Convention, pmbl.).

Congress gave domestic effect to the Convention in 1998 by enacting 18 U.S.C. § 229. The Act makes it unlawful "for any person knowingly . . . to develop, produce, otherwise acquire, transfer directly or indirectly, receive, stockpile, retain, own, possess, or use, or threaten to use, any chemical weapon." *Id.* § 229(a)(1). A "chemical weapon" is defined as "[a] toxic chemical and its precursors, except where intended for a purpose not prohibited under this chapter." 18 U.S.C. § 229F(1)(A). A toxic chemical, in turn, is defined as "any chemical which through its chemical action on life processes can cause death, temporary incapacitation or permanent harm to humans or animals." *Id.* § 229F(8)(A). And

3

"purposes not prohibited by this chapter" are defined as "[a]ny peaceful purpose related to an industrial, agricultural, research, medical, or pharmaceutical activity or other activity," and other specific purposes. *Id.* § 229F(7)(A).

> Count 1 charges:
>
> On or about February 24, 2020, in the District of Hawaii, ETHAN SANDOMIRE, the defendant, knowingly possessed and attempted to possess a chemical weapon, namely, precursors (trichloro-s-triazinetrione and hydrochloric acid), which when combined create a toxic chemical, that is, chlorine and chlorine gas, not intended for peaceful purposes, protective purposes, unrelated military purposes, or law enforcement purposes, as described in 18 U.S.C. § 229F(7).
>
> All in violation of Title 18, United States Code, Sections 229(a) and 229F.

Indictment, ECF No. 38 at PageID ## 145-46.

Defendant argues that the Indictment fails to state an offense against him because the statute does not reach his conduct.[1]  ECF No. 58-2 at PageID # 1250.  In the alternative, Defendant argues that § 229 is unconstitutionally vague

---

[1] Defendant also advances these arguments under the theory that the court lacks subject-matter jurisdiction.  *See* ECF No. 58-2 at PageID ## 1247-54.  Both the subject-matter jurisdiction theory and the failure to state a claim theory hinge on Defendant's proposition that the Act does not reach his alleged conduct.  *Id.*  Because the court concludes that the Indictment does state a claim against Defendant—that is, that the Act covers his conduct—the argument that that the court lacks subject-matter jurisdiction also fails.

and that, as applied to him, it exceeds Congress' authority under the Necessary and Proper and Treaty Clauses. *Id.* at PageID ## 1254-55. The court considers each argument in turn.

## A. Failure to State an Offense[2]

Defendant argues count 1 should be dismissed for failure to state a claim because: (1) the type of "ordinary household goods" he allegedly possessed are not chemical weapons under § 229; and (2) the Indictment "fails to allege a non-peaceful purpose which is covered under section 229." ECF No. 58-2 at PageID # 1250.[3] Both arguments fail.

---

[2] Federal Rule of Criminal Procedure 12(b)(3) requires a defendant to raise by pretrial motion any defense which "can be determined without a trial on the merits." Among Rule 12(b)(3)'s enumerated list of defenses that must be raised pretrial include a "failure to state an offense," Rule 12(b)(3)(B)(v).

[3] Defendant also argues that the Indictment fails to state an offense because it does not allege that he intended to use the chemical precursors to create chlorine gas. *See* ECF No. 58-2 at PageID # 1241. But the statute criminalizes simple possession of a toxic chemical, including chemical precursors; it does not contain a requirement that the defendant intended to use those precursors to create a toxic chemical. *See* 42 U.S.C. §§ 229(a)(1), 229F(1)(A). Thus, the Indictment need not allege such an intent. *See Hamling v. United States*, 418 U.S. 87, 117-18 (1974) ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the [offense] intended to be punished."). Moreover, as discussed below, the jury will be instructed on the definition of "chemical weapon" under *Bond* and the requirement that defendant possessed the precursors not intended for "any peaceful purpose." Although the exact contours of the jury instructions are not before the court at this time, these requirements will effectively address Plaintiff's concerns regarding the intended use of the chemical precursors.

"On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged. The indictment either states an offense or it doesn't." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citing *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)).

To state an offense, an indictment need only be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment that tracks the statutory language is generally sufficient if those words fully, directly, and expressly set forth all the elements necessary to constitute the offense. *See Hamling*, 418 U.S. at 117-18; *United States v. Mancuso*, 718 F.3d 780, 790 (9th Cir. 2013); *United States v. Tavelman*, 650 F.2d 1133, 1137 (9th Cir. 1981). The charge "must provide the essential facts necessary to apprise a defendant of the crime charged; it need not specify the theories or evidence upon which the government will rely to prove those facts." *Mancuso*, 713 F.3d at 790 (quoting *United States v. Cochrane*, 985 F.2d 1027, 1035 (9th Cir. 1993)).

"[A] Rule 12(b) motion to dismiss is not the proper way to raise a factual defense." *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993). Specifically, "[t]here is no summary judgment procedure in criminal cases. Nor do

6

the rules provide for a pre-trial determination of the evidence." *Jensen*, 93 F.3d at 669 (quoting *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)). Thus, a defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence. *Id*. When a defendant moves to dismiss based upon the government's alleged inability to prove an element of the offense, the court must determine if the issue raised is "entirely segregable from the evidence to be presented at trial." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). If resolution of the motion is "substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred." *Id*. (internal quotations and citation omitted).

Here, the Indictment states an offense as to count 1 because it alleges all the essential elements of the charged offense: it states that Defendant possessed a chemical weapon and that it was not intended for any peaceful purpose.

    **1.**    ***Chemical Weapon***

Defendant's argument that he did not possess a chemical weapon within the meaning of § 229 derives from his reading of *Bond v. United States*, 572 U.S. 844 (2014). *See* ECF No. 58-2 at PageID # 1242. *Bond* considered charges under § 229 against a defendant who was accused of placing chemical irritants on

the doorknob, car door, and mailbox of her husband's mistress with the hope of inducing an uncomfortable rash. *Bond*, 572 U.S. at 852. The only harm suffered by the victim was a minor thumb burn, which she treated by rinsing her thumb with water. *Id.* at 848. The defendant argued that § 229 was unconstitutional as applied to her under the 10th Amendment. *Id.* at 853.

The Supreme Court declined to answer the constitutional question but instead interpreted § 229, applying "basic principles of federalism" to determine that the statute does not reach "local criminal conduct," such as the "simple assault" perpetrated by Bond. *Id.* at 859-60, 864. Rather, § 229 applies to conduct that implicates the federal government's interest in "enforcing criminal laws against assassination, terrorism, and acts with the potential to cause mass suffering." *Id.* at 864.

In reaching this conclusion, the Court construed the statutory term "chemical weapon" according to its "ordinary meaning," which "takes account of both the particular chemicals that the defendant used and the circumstances in which she used them." *Id.* at 861 (explaining that the chemicals used by Bond to induce a rash could not be considered chemical weapons, but that they "might be chemical weapons if used . . . to poison a city's water supply").

8

The Court also distinguished Bond's conduct from previous prosecutions under § 229, all of which predominantly involved "either terrorist plots or the possession of extremely dangerous substances with the potential to cause severe harm to many people." *Id.* at 863-64 (citing, among others, *United States v. Crocker*, 260 F. App'x. 794 (6th Cir. 2008) (defendant attempted to acquire VX nerve gas and chlorine gas as part of a plot to attack a federal courthouse); *United States v. Fries*, 2012 WL 689157 (D. Ariz. Feb. 28, 2012) (defendant set off a homemade chlorine bomb in the victim's driveway, requiring evacuation of a residential neighborhood)).

Post-*Bond*, several courts have construed the Supreme Court's two-factor analysis as defining the "chemical weapon" element of a criminal offense under § 229. *See, e.g.*, *United States v. Le*, 902 F.3d 104, 114 (2d. Cir. 2018) (explaining that *Bond* defined the "chemical weapon" statutory element "by reference to two factors: (1) the type of chemicals in the case, and (2) the circumstances in which the defendant used them"); *United States v. Kimber*, 777 F.3d 553, 560-61 (2d. Cir. 2015) (same); *United States v. Levenderis*, 806 F.3d 390, 397 (6th Cir. 2015) (same); *see also United States v. Chamberlain*, 2016 WL 624940, at *1 (N.D. Cal. Feb. 10, 2016). Thus, applying the *Bond* framework, "the question is whether the type and intended use of the [toxic chemical] in this case

brings defendant's conduct within the common and ordinary meaning of ['chemical weapon']." *Levenderis*, 806 F.3d at 397 (applying *Bond* to a possession of a biological weapon charge under 18 U.S.C. § 175(a)); *see also Le*, 902 F.3d at 114-15 (interpreting *Bond*'s "two factor[]" definition of "chemical weapon" and explaining that where "the type of toxin at issue is particularly deadly, serves no other purpose than to kill, and poses a severe threat to public health and safety, the first *Bond* factor may, by itself, carry sufficient weight to have [a chemical] fall within the natural meaning of a [chemical weapon]") (internal quotations and citations omitted).

Accordingly, Defendant's argument that the chemical precursors he allegedly possessed do not constitute a "chemical weapon" under § 229 is a factual question that should be determined by the jury. *See Chamberlain*, 2016 WL 624940, at *1 (including this element in a jury instruction: "you may not convict the defendant of this charge unless you . . . find, beyond a reasonable doubt, considering both the particular toxin and the circumstances surrounding the defendant's possession of it, that there was a potential for severe harm to many people").[4] Answering these questions at this stage would require an impermissible

---

[4] To be clear, this Order does not attempt to craft the specific language of the jury instruction as to this element. That task is left for a later day, after receiving further input from the parties.

"pre-trial determination of the evidence." *Jensen*, 93 F.3d at 669 (quoting *Critzer*, 951 F.2d at 307); *Nukida*, 8 F.3d at 669.  Defendant's argument is thus an inappropriate basis upon which to seek dismissal of the charge against him at this stage.

Moreover, even if the court *could* consider Defendant's argument, his Motion to Dismiss would still fail.  The Government has alleged that Defendant possessed precursors to chlorine and chlorine gas—chemicals capable of causing mass harm.  *See United States v. Fries*, 781 F.3d 1137, 1149 (9th Cir. 2015) ("[C]hlorine gas is toxic and qualifies as a chemical that is immediately dangerous to life and health."); *Kimber*, 777 F.3d at 561 ("[C]hlorine is commercially available, yet, as [*Bond*] suggested, it may serve as a chemical weapon when used to make a chlorine bomb.").  And the Government has alleged that Defendant intended to use those chemicals to cause mass harm—by releasing them in a large residential apartment building in downtown Honolulu.  Indictment at ¶¶ 24-36, ECF No. 38 at PageID ## 139-44.  These allegations meet *Bond*'s requirements that crimes charged under § 229 are not "local criminal conduct," but rather implicate the federal government's interest in prohibiting "assassination, terrorism, and acts with the potential to cause mass suffering." *Bond*, 572 U.S. at 863-64.

### 2. *Non-peaceful Purpose*

Defendant also argues that the Indictment fails to state an offense because it does not "allege the actual 'non-peaceful purpose'" for which Sandomire allegedly possessed toxic chemicals. ECF No. 58-2 at PageID # 1251. Defendant argues that *Bond* requires this specific factual allegation because "[t]he non-peaceful purpose is only covered under section 229 if the type and quantity of the chemicals the defendant possessed are consistent with that non-peaceful purpose." *Id.* at PageID # 1252. As such, Defendant concludes, "the indictment's failure to identify [his] actual non-peaceful purpose precludes the Court from determining whether, as a matter of law, his conduct is covered by the statute." *Id.* at PageID ## 1253-54.

This argument is based upon a faulty premise. As discussed above, whether Defendant's conduct is covered by the statute is not a question of law to be decided by the court, but rather a question of fact to be left to the jury. Moreover, the Government is not required, at this stage, to advance a specific theory as to what Sandomire's non-peaceful purpose was. An indictment need not set forth specific theories or evidence to state an offense. *Mancuso*, 718 F.3d at 790. Rather, an indictment that tracks the statutory language—as the Indictment does here by alleging that Sandomire possessed chemicals "not intended for

peaceful purposes, protective purposes, unrelated military purposes, or law enforcement purposes, as described in 18 U.S.C. § 229F(7)"—is sufficient. Indictment, ECF No. 38 at PageID ## 145-46.  Finally, although it is not necessary to do so, the Indictment *does*, in fact, allege a specific non-peaceful purpose: to create chlorine gas and release it into a large residential apartment building in downtown Honolulu.  *Id.* at ¶¶ 24-36, PageID ## 139-44. [5]

For these reasons, count 1 states an offense and is not deficient.

B.     **Constitutionality of 18 U.S.C. § 229**

Defendant next argues that § 229 is unconstitutional.  He first relies on Justice Scalia's concurrence in *Bond* to argue that the statute, as interpreted by the *Bond* majority, is unconstitutionally vague.  ECF No. 58-2 at PageID # 1254. Next, and again relying on Justice Scalia's *Bond* concurrence, Defendant argues that § 229 is unconstitutional as applied to him because it exceeds Congress' authority under the Necessary and Proper Clause.  *Id.* at PageID # 1255.

---

[5] The Government also argues that it is "not required to allege or prove any particular purpose for defendant's possession of chlorine gas precursors at this stage" because "[t]he lack of a non-prohibited purpose is an element of the offense, but the existence of a specific improper purpose is not." ECF No. 67 at PageID ## 1878-79.  For the reasons discussed above, the Indictment does state an offense, and thus the court does not address this argument here.

### 1. *Vagueness*

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." A criminal statute violates this guarantee if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)). Put another way, to survive constitutional muster a criminal statute must "establish minimal guidelines to govern law enforcement" such that it does not "permit a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections." *Kolender*, 461 U.S. at 358 (quoting *Smith v. Goguen*, 415 U.S. 566, 574-75 (1974)) (internal quotations and brackets omitted).

Adopting the position of the *Bond* concurrence, Defendant argues that the Court's interpretation of "chemical weapon"—defined by both the type of chemicals at issue and their use or intended use—does not give a person of ordinary intelligence fair notice of the statute's scope. In particular, he argues that "[n]o person of ordinary intelligence would be on fair notice that [Defendant's] simple possession of chlorine pool tablets and toilet bowl cleaner could constitute a

14

crime." ECF No. 58-2 at PageID # 1254-55 (citing *Bond*, 572 U.S. at 867 (Scalia, J., concurring in the judgment)).

Defendant's argument is incongruent with the Supreme Court's interpretation of § 229. The statute does not "sweep in everything from the detergent under the kitchen sink to the stain remover in the laundry room" because "no one would ordinarily describe those substances as 'chemical weapons.'" *Bond*, 572 U.S. at 862. Nor, the Court made clear, does the statute apply to "purely local crimes," such as "simple assault." *Id.* at 863-64. Rather, the statute applies to a specific range of conduct—that involving chemicals capable of assassination, terrorism, and inflicting severe harm and that are used or intended to cause such harm. *Id.* at 863. This qualitative standard is sufficiently clear and concrete to survive constitutional muster. *Johnson*, 576 U.S. at 603-04 ("As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'") (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

In short, *Bond*'s limiting principle that criminal conduct under § 229 must involve dangerous chemicals used or intended to cause severe harm is

sufficient to put people of ordinary intelligence on notice of the statute's scope. Defendant's argument that § 229 is unconstitutionally vague fails.

### 2.  *Necessary and Proper Clause*

Defendant also relies on Justice Scalia's concurrence in *Bond* to argue that § 229 is unconstitutional as applied to him under the Necessary and Proper and Treaty Clauses because Congress lacks the authority to "implement treaties already made." *Bond*, 572 U.S. at 876 (Scalia, J., concurring in the judgment). But, as Defendant acknowledges, the Ninth Circuit has subsequently upheld the constitutionality of § 229 against such challenge. *Fries*, 781 F.3d at 1149. In so doing, the Ninth Circuit adopted the reasoning of the Third Circuit in *United States v. Bond*, 681 F.3d 149, 151 (3d Cir. 2012), which held, under *Missouri v. Holland*, 252 U.S. 416 (1920), "'that if the treaty is valid there can be no dispute about the validity of the statute as a necessary and proper means to execute the powers of the Government.'" *Id.* at 1148 (quoting *Bond*, 681 F.3d at 162). And "'because the Chemical Weapons Convention falls comfortably within the Treaty Power's traditional subject matter limitation, the Act is within the constitutional powers of the federal government under the Necessary and Proper Clause and the Treaty Power, unless it somehow goes beyond the Convention . . . .'" *Id.* at 1148 (quoting *Bond*, 681 F.3d at 165) (internal brackets omitted).

Section 229 is, therefore, only unconstitutional as applied to Defendant if that application goes beyond the scope of the Chemical Weapons Convention. The Convention broadly pertains to "the proliferation and use of chemical weapons," *id.*, and was drafted with the explicit goal of prohibiting private actors from possessing and using chemical weapons. *See* Chemical Weapons Convention, S. Treaty Doc. No. 103-21, 1974 U.N.T.S. 317, pmbl. In *Fries*, the Ninth Circuit found that prosecution of a defendant who released chlorine gas in a residential neighborhood fell comfortably within the Convention's scope because the defendant's "conduct constituted possession of extremely dangerous substances with the potential to cause severe harm to many people." *Fries*, 781 F.3d at 1149 (internal quotation and citation omitted).

The charge against Defendant under § 229, likewise, fits comfortably within the scope of the Convention. The Indictment alleges that Defendant was in possession of precursors to chlorine gas—the same toxic chemical possessed by the defendant in *Fries*. And the Indictment alleges that Defendant intended to use those precursors to create chlorine gas and release it in a large residential apartment building. This alleged conduct, too, is substantially similar to the conduct constitutionally prosecuted in *Fries*. Considering the chemical precursors Defendant allegedly possessed and the circumstances under which he allegedly

17

intended to use them, § 229 is a constitutional exercise of congressional authority as applied to him.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Count One of the Indictment, ECF No. 58, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 21, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Sandomire*, Cr. No. 20-00085 JMS, Order Denying Defendant's Motion to Dismiss Count One of the Indictment, ECF No. 58.